April 11, 1977

## 78-77  MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

### Assumption by People's Republic of China of Expenses of U.S. Delegation—Constitution (Art. I, § 9, cl. 8)

You have asked for our opinion as to whether there is any legal obstacle to the acceptance, by members of an official delegation who will be visiting the People's Republic of China, of lodging, meals, and transportation at the expense of the Government of that country. The delegation will include Members of Congress and the President's son.[1]

Article I, Section 9, Clause 8 of the Constitution provides:

No Title of Nobility shall be granted by the United States: And no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument, Office or Title, of any kind whatever, from any King, Prince or foreign State.

The purpose of the prohibition against the receipt of gifts is to prevent foreign influence over officers of the United States. 2 Farrand, *The Records of the Federal Convention of 1787* (1937), at 389; 24 Op. A.G. 116 (1902).

Congress has enacted legislation to implement the constitutional provision. *See* 5 U.S.C. § 7342. Section 7342 allows the acceptance of gifts from foreign governments by Federal officers and employees in two limited circumstances: (1) where the gift is of minimal value[2] and tendered or received as a souvenir or mark of courtesy; and (2) where the gift is of more than minimal value but its refusal would be likely to cause offense or embarrassment or otherwise adversely affect the foreign relations of the United States. In the former situation the recipient may retain the gift, but in the latter it is deemed to have been accepted on behalf of the United States and must be deposited with the

---

[1] During a debate in the House on April 6, 1977, Congressman Brademas stated that the official expenses of Members of Congress would be paid from counterpart funds of the United States. 123 Cong. Rec. H. 3145. Representative Brademas' office confirmed this by telephone. To the extent United States funds are used, there would appear to be no legal problems.

[2] "Minimal value" is defined in applicable regulations as less than $50. 22 CFR 3.3(e).

State Department's Chief of Protocol for use and disposal as property of the United States under implementing State Department regulations, 22 CFR, Part 3. Although the statutory provision does not expressly so state, it is implicit that any gift not covered by either of these two consent provisions may not be accepted.

The limitations on acceptance of gifts from foreign governments apply to Members of Congress and their staffs who will make the trip to China, as well as Executive branch personnel traveling with the party. *See* 5 U.S.C. §§ 7342(a)(1)(A) and (E); 22 CFR 3.3(a). The statute also applies to a member of the family and household of any of the officials covered by the statute. 5 U.S.C. § 7342(a)(1)(F). Since the statute applies to the President, 5 U.S.C. § 7342(a)(1)(D), the President's son and his family are also subject to the restrictions on the receipt of gifts from foreign governments.

However, we do not believe that the constitutional and statutory provisions just discussed are to be read to prohibit the contemplated arrangements for the Chinese Government to assume the expenses of the members of the delegation. We take this position despite the breadth of the constitutional language that "no Person . . . shall . . . accept of any present . . . of any kind whatever . . . ." Although the term "Present" might appear to connote a tangible item, we believe that a foreign government's furnishing of travel and subsistence to an individual officer of the United States would be prohibited by the Constitution as well.[3] Similarly, it is our opinion that travel and subsistence furnished to an individual by a foreign government would constitute a "gift" under the statute. *See* 5 U.S.C. § 7342(a)(3). Nevertheless, in the present case we do not believe that the "present" or "gift" of travel, lodging, and food will be "accepted" by individual members of the delegation within the contemplation of the Constitution or the statute.

The trip is being made by an official delegation, not by individual Members of Congress or Executive branch employees travelling on their own behalf. Food, lodging, and travel will be accepted by individuals as members of the official delegation. In this sense, the hospitality is extended as a diplomatic courtesy to the United States Government. Moreover, if the Chinese Government did not assume these expenses, they presumably would be paid for out of funds appropriated to the Congress and to the Executive branch. Thus, it appears that the real beneficiary, in purely monetary terms, of any gift or present involved is the United States Government, not individual members of the delegation.

This is an important distinction, because the constitutional prohibition has been construed to prohibit only gifts made to individual officials, not gifts made to the United States Government. For example, the cited opinion of the Attorney General (24 Op. A.G. 116) indicated that gifts of portraits to be presented to the Navy Department and the Naval and Military Academies could

---

[3] The additional phrase "of any kind whatever" indicates that the clause should be given a broad construction.

be accepted on the ground that they were *made to the Government*. The statute implementing the constitutional prohibition suggests this same conclusion in providing that gifts of more than minimal value given to an individual employee are deemed to have been accepted on behalf of the United States. *See* 5 U.S.C. § 7342(c). We see no reason why the distinction between presents given to individuals and presents given to the United States should not apply to official diplomatic travel, such as that involved in the present case.

In this connection, we have been advised by the State Department's Assistant Legal Adviser for Management (which has responsibility for advising the Chief of Protocol on questions arising under the foreign gifts statute) that 5 U.S.C. § 7342 has not been construed to prohibit a foreign government from paying expenses of Government employees traveling to another country if the agency approves the arrangement in advance for an official agency mission. Presumably this same rationale would apply to trips by Members of Congress where there has been an appropriate determination that the trip is official.

We were also informed that the Comptroller General advised Speaker Albert in an unpublished letter that members of a previous congressional delegation to China could be furnished the same general type of services as those at issue here on the theory that the real benefit was to the United States Government rather than to individuals.[4] The Comptroller General's letter reportedly placed particular emphasis on the diplomatic considerations involved.[5]

The distinction drawn in the past between travel and subsistence furnished to individuals and that in effect furnished to the United States Government is, in our view, a reasonable construction of the constitutional and statutory provisions. In situations in which the individual official's own agency would pay expenses if the foreign government did not, the official in theory receives no personal benefit from the foreign government. The purpose of preventing foreign influence over officials of the United States that may result from receipt of personal benefits is therefore not directly served by prohibiting the acceptance of the foreign government's hospitality. Per diem payments should of course be reduced or eliminated in such a case to the extent necessary to offset any benefits furnished by the foreign government.

We recognize that a foreign government's invitation for a Member of Congress or other officer or employee of the Federal Government to make what is termed an "official" visit at the other country's expense could in itself carry

---

[4]During the House floor debate regarding the present trip, Representative Rhodes stated that when he accompanied Speaker Albert on a trip to China at least some of the expenses were borne by the Chinese Government. 123 Cong. Rec. H. 3145 (daily ed., April 6, 1977). This was apparently the same trip.

[5]Representative Brademas mentioned the Comptroller General's ruling on the House floor on April 6, but stated that the ruling was "the law was not violated by reciprocal expense arrangements"—presumably meaning mutual agreements under which the host country pays the expenses of persons visiting from the other country. There may be such an arrangement with China, but we do not believe that the reciprocity element is necessary under the theory set forth herein.

347

the seeds for the type of foreign influence the constitutional and statutory provisions were designed to prevent.[6] For this reason, it would be consistent with the spirit of the constitutional and statutory restrictions for the United States Government to insist on paying the expenses of official travel abroad whenever possible, even where payment by a foreign government could legitimately be characterized as a gift to the United States rather than to the individuals involved. But where unique diplomatic concerns make such insistence inadvisable, as apparently is true in the present case, we see no objection to acceptance of the foreign government's hospitality.

JOHN M. HARMON
*Acting Assistant Attorney General*
*Office of Legal Counsel*

---

[6]It is no doubt for this reason that the Department of State has apparently insisted, at least insofar as its own employees are concerned, that any such arrangement have prior approval. In this connection, Representative Rhodes pointed out on the House floor that the House passed a resolution in 1975 permitting the 1975 trip to be at the expense of the Chinese Government. 123 Cong. Rec. H. 3145, *supra*. We are not aware of any similar resolution in the present case. However, the means by which travel by Members of Congress is approved or deemed official is an internal concern of the House. Presumably the President's designation of his son as a representative on the trip under circumstances in which it is apparent that the Chinese Government will pay expenses furnishes analogous official approval.